1
2
3
4
5
6
7
8
9

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STANLEY W. MUNDY, | Case No. 1:22-cv-00401-ADA-SAB (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSAL OF CERTAIN CLAIMS AND DEFENDANTS |
| v. | |
| SACRAMENTO COUNTY JAIL MEDICAL STAFF, et al., | (ECF No. 34) |
| Defendants. | |

Plaintiff Stanley A. Mundy is proceeding pro se and in forma pauperis in this civil rights action filed pursuant to 42 U.S.C. § 1983.

Currently before the Court is Plaintiff's second amended complaint, filed March 29, 2023.

## I.

## SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fail[] to state a claim on which relief may be granted," or that "seek[] monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B); see also 28 U.S.C. § 1915A(b).

1    A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Moreover, Plaintiff must demonstrate that each defendant personally participated in the deprivation of Plaintiff's rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Prisoners proceeding *pro se* in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted). To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

**II.**

**SUMMARY OF ALLEGATIONS**

The Court accepts Plaintiff's allegations in his complaint as true *only* for the purpose of the screening requirement under 28 U.S.C. § 1915.

CDCR has established and maintained a policy which denies a non-soy diet to inmates even if prescribed by medical professionals and inmates are required instructed to read the labels of food to avoid soy products even though such labels are not available.

At North Kern State Prison (NKSP), Plaintiff told registered nurses Ligsay and Dator, and Doctor Alphonso that he was in need of a non-soy diet as he was suffering hives, rashes, confusion, and bleeding. Dator and Alfonso both repeated "we see you have a severe soy allergy and serious reactions but this prison does not provide medically prescribed diets and CDCR does not like to provide "NON SOY DIETS."

1    On April 1, April 2, and April 5, 2021, Plaintiff told Dr. Alphonso for  and nurse Dator

2    that he was having severe soy reactions and requested an alternative diet.  Dr. Alphonso ordered

3    a fecal test.

4    On April 12 and April 16, 2021, Plaintiff repeated that he was suffering more attacks and

5    Alphonso stated "try not to eat foods that have 'soy.'"  Plaintiff repeated that he could not tell

6    what foods contain soy and asked if Alphonso could tell him to which he replied "that's a CDCR

7    custody issue."

8    On April 16, 2021, a fecal test confirmed sever bleeding.

9    In May 2021, Plaintiff told several prison officials that he was having a severe soy

10   reaction and they all stated "this prison does not provide medical diets and especially not 'non

11   soy' it is our job to get you to a prison that does."  Plaintiff saw Dr. Alphonso approximately

12   three more times in May and his request for a non-soy diet was denied.

13   On May 18, 2021, Alphonso refused a diet and surgical intervention and made Plaintiff

14   take a second fecal test.

15   On May 19, 2021, the results of the fecal test revealed bleeding and he was denied a non-

16   soy diet.

17   On May 27, 2021, registered nurse Allen informed Alphonso and Dator that he was

18   worried Plaintiff was not being provided a proper diet and medical care which was ignored.

19   On June 1, 2021, Plaintiff was transferred to Pelican Bay State Prison (PBSP).  Plaintiff

20   was told by NKSP officials that he would receive the prescribed non-soy diet and medical

21   treatment at PBSP.

22   On June 1 and June 2, 2021, Plaintiff told registered nurse Lucero and primary Doctor

23   Pimentel that he sent to PVSP to get a prescribed non-soy diet.  Both Lucero and Pimentel

24   repeated the policy that the prison does not provide medically prescribed diets, and that CDCR

25   will not provide a non-soy diet.

26   On June 23 and June 24, 2021, Plaintiff reported to registered nurse Long and Doctor

27   Pimentel showing hives, rashes, severe abdominal pain, bleeding, severe head pain, dizziness,

28   confusion, low heart rate, and fatigue due to the lack of a non-soy diet.

1

2        On July 1 and July 8, 2021, Plaintiff reported more reactions and again requested a non-
3 soy diet.  Long and Pimentel repeated the policy statement that CDCR does not provide a non-
4 soy diet.

5        On July 17 and July 22, 2021, Plaintiff showed Long, Pimentel and Scheesley that he was
6 bleeding from foods containing soy.

7        On August 5, 2021, Plaintiff reported to Long and Pimentel that he was suffering from
8 hives, rashes which were infected.  However, Long and Pimentel refused any treatment for those
9 needs.

10        From August 1 to August 30, 2021, Plaintiff reported to Long and Pimentel that he was
11 worried about severe bleeding, delay of treatment, and no treatment for hives, rashes and
12 infections.

13        On August 23, 2021, Plaintiff reported to Long and Pimentel that his right leg was black
14 and very painful.  He also was suffering from bleeding, fatigue, confusion, and weakness, but he
15 was not provided any medical treatment.

16        By September 1, 2021, Plaintiff had put in a number of grievances regarding Long,
17 Pimentel, and Onyeje who all denied a proper diet and medical treatment.

18        On September 1 and September 2, 2021, Long, Pimentel, Oyneje, and Mason all repeated
19 that they were aware of Plaintiff's soy allergy, but CDCR did not provide a non-soy diet.

20        On September 15, September 20, September 23, and September 30, 2021, Plaintiff
21 reported to Long, Pimentel and other Defendants that multiple more attacks occurred and he was
22 in need of medical treatment and diet.

23        On October 8, October 11, October 21, October 25, and November 5, 2021, Plaintiff
24 reported the same concerns regarding his need for medical treatment and diet to Scheesley and
25 Casillas who always told him that only Long, Pimentel and Onyeje could help him.  On every
26 occasion Plaintiff showed them his reactions to soy, but he was denied treatment and a non-soy
27 diet.

28        By November 15, 2021, Plaintiff suffered the same right leg abscess caused by hives,

rashes, and Defendants Long, Pimentel, and Onyeje refused any basic care even though the abscess was black, swollen and painful.

Later in November 2021, Plaintiff's right leg became worse and when he went to the medical building, Long Pimentel, Oyneje, and Conanan refused treatment.  Plaint went "man down" and Logan, Long, and Pimentel refused to send him to the TTA, and other medical officials overruled the decision.  Logan, Long, Pimentel and Conanan refused outside medical care and treatment.

On December 1, 2021, Plaintiff went "man down" again and Clark overrode Logan, Pimentel and Conanan and sent him to the TTA.

On December 2, 2021, Plaintiff's cellmate notified staff of a medical emergency at 4:00 a.m.  Logan, Pimentel, Long, and Conanan did not want to send Plaintiff to the TTA and refused outside care.  Plaintiff showed his leg to the transportation sergeant who rushed Plaintiff to the emergency room in Bakersfield overruling the decision of Long, Logan, Conanan and Pimentel. The emergency Doctor put Plaintiff on a non-soy diet and wanted to keep Plaintiff longer but Conanan refused.

### III.

### DISCUSSION

**A.     CDCR Policy/Non-Soy Diet/Failure Provide Medical Forms**

1.     <u>Non-Soy Diet</u>

To prove liability for an action or policy, the plaintiff "must ... demonstrate that his deprivation resulted from an official policy or custom established by a ... policymaker possessed with final authority to establish that policy." <u>Waggy v. Spokane County Washington</u>, 594 F.3d 707, 713 (9th Cir.2010).  A claim for prospective injunctive relief against a state official in his or her official capacity is not barred by the Eleventh Amendment provided the official has authority to implement the requested relief.  <u>Will v. Michigan Dept. of State Police</u>, 491 U.S. 58, 92 (1989). Moreover, "[a] plaintiff seeking injunctive relief against the State is not required to allege a named official's personal involvement in the acts or omissions constituting the alleged constitutional violation." <u>Hartmann v. California Dep't of Corr. & Rehab.</u>, 707 F.3d 1114, 1127

1   (9th Cir. 2013) (citing Hafer v. Melo, 502 U.S. 21, 25 (1991); Kentucky v. Graham, 473 U.S.

2   159, 166 (1985)); see also Rouser v. White, 707 F. Supp. 2d 1055, 1066 (E.D. Cal. 2010) (proper

3   defendant for injunctive relief in suit seeking implementation of CDCR policy is the CDCR

4   Secretary in his official capacity). Instead, Plaintiff need only identify the law or policy

5   challenged as a constitutional violation and name the official or officials within the entity who is

6   or are alleged to have a "fairly direct" connection with the enforcement of that policy, see

7   Holmes v. Estock, No. 3:16-CV-02458-MMA-BLM, 2018 WL 5840043, at *4 (S.D. Cal. Nov. 8,

8   2018) (quoting Ex parte Young, 209 U.S. 123, 157 (1908)), and can appropriately respond to

9   injunctive relief. Hartmann, 707 F.3d at 1127 (citing Los Angeles Cnty. v. Humphries, 526 U.S.

10   29, 35-37, 39; Hafer, 502 U.S. at 25); Colwell, 763 F.3d at 1071; McQueen v. Brown, No. 2:15-

11   CV-2544-JAM-AC P, 2018 WL 1875631, at *4 (E.D. Cal. Apr. 19, 2018).

12         Accordingly, Plaintiff's Eighth Amendment official-capacity claim alleging that CDCR

13   has a policy to not allow a non-soy diet and does not label foods to identify if it contains soy

14   which has resulted in medical problems is sufficient to meet the low threshold for proceeding

15   past the screening stage against only Defendant, Secretary Jeff Macomber.   See Wilhelm v.

16   Rotman, 680 F.3d 1113, 1123 (9th Cir. 2012); Colwell v. Bannister, 763 F.3d 1060, 1070 (9th

17   Cir. 2014) (finding Director of Nevada Department of Corrections was proper defendant in

18   prisoner's Eighth Amendment inadequate medical care claims " 'because he would be

19   responsible for ensuring that injunctive relief was carried out, even if he was not personally

20   involved in the decision giving rise to [the plaintiff's] claims.' ") (quoting Pouncil v. Tilton, 704

21   F.3d 568, 576 (9th Cir. 2012)).   However, Plaintiff claim is not viable against the California

22   Department of Corrections and Rehabilitation ("CDCR") because it is a state agency that is

23   immune from suit under the Eleventh Amendment. See Will v. Michigan Dep't of State Police,

24   491 U.S. 58, 66 (1989); Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per curiam)

25   (holding that prisoner's Eighth Amendment claims against CDCR for damages and injunctive

26   relief were barred by Eleventh Amendment immunity); Pennhurst State Sch. & Hosp. v.

27   Halderman, 465 U.S. 89, 100 (1984) (Eleventh Amendment immunity extends to state agencies).

28   ///

1          2.      Failure to Provide Medical Forms

2          Plaintiff also contends that CDCR has a policy to not provide medical forms.  However,

3   contrary to Plaintiff's contention, based on a review of the allegations in the second amended

4   complaint and attached exhibits, it is clear that Plaintiff was allowed to submit requests for

5   medical evaluation as he was examined on several different occasions.  Thus, this alleged policy

6   could not have been the moving force behind any of the alleged denial of medical treatment

7   and/or denial of a non-soy diet.  Graham, 473 U.S. at 166 ("in an official-capacity suit the

8   entity's 'policy or custom' must have played a part in the violation of federal law"); cf. Los

9   Angeles Cnty. v. Humphries, 562 U.S. 29 (2010) (holding that, in actions against municipal

10  entities, the requirement that civil rights plaintiffs show that their injury was caused by municipal

11  policy or custom is equally applicable, irrespective of whether the remedy sought is money

12  damages or prospective relief); Gomez v. Vernon, 255 F.3d 1118, 1127 (9th Cir.2001); see also

13  Dunsmore v. California, No. 11–cv–7141–DOC (JCG), 2012 WL 3809413, at *3–4 (C.D. Cal.

14  July 26, 2012) (recommending dismissal of inmate's official-capacity claim for failure to

15  plausibly connect policies to the specific conduct that allegedly violated his rights).

16          **B.      Deliberate Indifference to Serious Medical Need**

17          While the Eighth Amendment of the United States Constitution entitles Plaintiff to

18  medical care, the Eighth Amendment is violated only when a prison official acts with deliberate

19  indifference to an inmate's serious medical needs.  Snow v. McDaniel, 681 F.3d 978, 985 (9th

20  Cir. 2012), overruled in part on other grounds by Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th

21  Cir. 2014); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).  The two-part test for deliberate

22  indifference requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that failure

23  to treat a prisoner's condition could result in further significant injury or the 'unnecessary and

24  wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately

25  indifferent."  Jett, 439 F.3d at 1096 (citation omitted).

26          "A medical need is serious if failure to treat it will result in significant injury or the

27  unnecessary and wanton infliction of pain."  Peralta v. Dillard, 744 F.3d 1076, 1081 (9th Cir.

28  2014) (citation and internal quotation marks omitted).  "Indications that a plaintiff has a serious

1    medical need include '[t]he existence of an injury that a reasonable doctor or patient would find
2    important and worthy of comment or treatment; the presence of a medical condition that
3    significantly affects an individual's daily activities; or the existence of chronic and substantial
4    pain.'" Colwell v. Bannister, 763 F.3d 1060, 1066 (9th Cir. 2014).

5         Assuming the validity of the complaint as this Court must, Plaintiff's allegations in the
6    second amended complaint are sufficient to state a cognizable claim for deliberate indifference in
7    failing to treat his injuries after being denied a non-soy diet against Defendants Long, Pimentel
8    Onyeje, Logan, and Conanan.  However, Plaintiff fails to present sufficient factual allegations to
9    state a cognizable claim for deliberate indifference against any other Defendants.  Because
10   Plaintiff has previously been provided with the applicable legal standards and granted leave to
11   amend, the Court finds further amendment would be futile.

12        **C.    Denial of Access to Inmate Grievances/Procedure**

13        The Due Process Clause protects Plaintiff against the deprivation of liberty without the
14   procedural protections to which he is entitled under the law.  Wilkinson v. Austin, 545 U.S. 209,
15   221 (2005). However, Plaintiff has no stand-alone due process rights related to the administrative
16   grievance process. Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003); Mann v. Adams, 855
17   F.2d 639, 640 (9th Cir. 1988) (holding that there is no protected liberty interest to a grievance
18   procedure). California's regulations grant prisoners a purely procedural right: the right to have a
19   prison appeal. See Cal. Code Regs. tit. 15, §§ 3084-3084.9 (2014). In other words, prison
20   officials are not required under federal law to process inmate grievances in a certain way. Thus,
21   the denial, rejection, screening out of issues, review, or cancellation of a grievance does not
22   constitute a due process violation. See, e.g., Evans v. Skolnik, 637 F. App'x 285, 288 (9th Cir.
23   2015) (a prison official's denial of a grievance does not itself violate the constitution); Wright v.
24   Shannon, No. 1:05-cv-01485-LJO-YNP PC, 2010 WL 445203, at *5 (E.D. Cal. Feb. 2, 2010)
25   (plaintiff's allegations that prison officials denied or ignored his inmate appeals failed to state a
26   cognizable claim under the First Amendment); Towner v. Knowles, No. CIV S-08-2823 LKK
27   EFB P, 2009 WL 4281999 at *2 (E.D. Cal. Nov. 20, 2009) (allegations that prison officials
28   screened out his inmate appeals without any basis failed to indicate a deprivation of federal

rights); Williams v. Cate, 1:09-CV-00568-OWW-YNP PC, 2009 WL 3789597, at *6 (E.D. Cal. Nov. 10, 2009) ("Plaintiff has no protected liberty interest in the vindication of his administrative claims."). Similarly, Plaintiff may not impose liability on a defendant simply because he played a role in processing plaintiff's inmate appeals. See Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (because an administrative appeal process is only a procedural right, no substantive right is conferred, no due process protections arise, and the "failure to process any of Buckley's grievances, without more, is not actionable under section 1983."). Accordingly, Plaintiff cannot and does not state a cognizable claim based on the processing and/or denial of any inmate grievance.

**D.     Further Leave to Amend**

Plaintiff has had two opportunities to state a claim. The defects set forth above are not the result of inartful pleading. Further amendment here would be futile. Accordingly, the Court recommends that the first amended complaint be dismissed without further leave to amend. See, e.g., Fid. Fin. Corp. v. Fed. Home Loan Bank of S.F., 792 F.2d 1432, 1438 (9th Cir. 1986) ("The district court's discretion to deny leave to amend s particularly broad where the court has already given the plaintiff an opportunity to amend his complaint."); Ismail v. Cnty. of Orange, 917 F. Supp. 2d 1060, 1066 (C.D. Cal. 2012).

**IV.**

**RECOMMENDATIONS**

Based on the foregoing, it is HEREBY RECOMMENDED that:

1.     This action proceed on Plaintiff's Eighth Amendment official capacity claim regarding the non-soy diet at CDCR against Defendant Jeff Macomber, and on Plaintiff's Eighth Amendment deliberate indifference claim against Defendants Long, Pimentel Onyeje, Logan, and Conanan; and

2.     All other claims and Defendants be dismissed from the action for failure to state a cognizable claim for relief.

///
///

9

1    These Findings and Recommendations will be submitted to the United States District

2  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **fourteen**

3  **(14) days** after being served with these Findings and Recommendations, the parties may file

4  written objections with the Court.  The document should be captioned "Objections to Magistrate

5  Judge's Findings and Recommendations."  The parties are advised that failure to file objections

6  within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler,

7  772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir.

8  1991)).

9

10  IT IS SO ORDERED.

11  Dated:   **May 24, 2023**

        UNITED STATES MAGISTRATE JUDGE

10