UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STANLEY W. MUNDY,<br><br>   Plaintiff,<br><br>   v.<br><br>SACRAMENTO COUNTY JAIL MEDICAL STAFF, et al.,<br><br>   Defendants. | No. 1:22-cv-00401-KES-SAB (PC)<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' EXHAUSTION MOTION FOR SUMMARY JUDGMENT<br><br>(ECF No. 79) |

Plaintiff Stanley A. Mundy is proceeding pro se and in forma pauperis in this civil rights action filed pursuant to 42 U.S.C. § 1983.

Currently before the Court is Defendants' exhaustion motion for summary judgment, filed July 17, 2025.

**I.**

**RELEVANT BACKGROUND**

This action proceeds on Plaintiff's Eighth Amendment official capacity claim regarding plaintiff's non-soy diet at CDCR against defendant Jeff Macomber, and on Plaintiff's Eighth Amendment deliberate indifference claim against defendants Long, Gomez Pimentel, Onyeje, Logan, and Conanan.

Defendants filed an answer to the operative complaint on February 10, 2025. (ECF No. 69.) The discovery and scheduling order was issued on March 17, 2025. (ECF No. 74.)

1     On July 17, 2025, Defendants M. Logan, O. Onyeje, S. Long, M. Conanan, and K. Gomez Pimentel filed a motion for summary judgment for failure to exhaust the administrative remedies.[1]  (ECF No. 79.)

    Plaintiff filed an opposition on August 11, 2025, and Defendants filed a reply on August 25, 2025.  (ECF Nos. 84, 86.)

    On August 22, 2025, Plaintiff filed a motion to add an addendum to his opposition.  (ECF No. 85.)  On September 8, 2025, Plaintiff filed a motion to stay the proceedings pursuant to Federal Rule of Civil Procedure 56.  (ECF No. 87.)

    On September 9, 2025, the Court granted Plaintiff's motion to add an addendum to his opposition, and denied Plaintiff's motion to stay the proceedings.  (ECF No. 88.)

    On September 10, 2025, the Court denied Plaintiff's motion to amend the complaint, without prejudice.  (ECF Nos. 82, 89.)

## II.

## LEGAL STANDARD

### A.  Statutory Exhaustion Requirement

    The Prison Litigation Reform Act (PLRA) of 1995, requires that prisoners exhaust "such administrative remedies as are available" before commencing a suit challenging prison conditions."  42 U.S.C. § 1997e(a); see also Ross v. Blake, 578 U.S. 632, 638 (2016) ("An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones.").  Exhaustion is mandatory unless unavailable.  "The obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available.'  Once that is no longer the case, then there are no 'remedies … available,' and the prisoner need not further pursue the grievance."  Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) (emphasis in original) (citing Booth v. Churner, 532 U.S. 731, 739 (2001)).

    This statutory exhaustion requirement applies to all inmate suits about prison life, Porter v. Nussle, 534 U.S. 516, 532 (2002) (quotation marks omitted), regardless of the relief sought by

---

[1] Defendants concede that Plaintiff exhausted his official capacity claim against Defendant Macomber. (ECF No. 79-1, n.1.)

1  the prisoner or the relief offered by the process, Booth v. Churner, 532 U.S. at 741, and
2  unexhausted claims may not be brought to court, Jones v. Bock, 549 U.S. 199, 211 (2007) (citing
3  Porter, 534 U.S. at 524).
4        The failure to exhaust is an affirmative defense, and the defendants bear the burden of
5  raising and proving the absence of exhaustion.  Jones, 549 U.S. at 216; Albino v. Baca, 747 F.3d
6  1162, 1166 (9th Cir. 2014).  "In the rare event that a failure to exhaust is clear from the face of
7  the complaint, a defendant may move for dismissal under Rule 12(b)(6)."  Albino, 747 F.3d at
8  1166.  Otherwise, the defendants must produce evidence proving the failure to exhaust, and they
9  are entitled to summary judgment under Rule 56 only if the undisputed evidence, viewed in the
10  light most favorable to the plaintiff, shows he failed to exhaust.  Id.

11      **B.**    **Summary Judgment Standard**
12        Any party may move for summary judgment, and the Court shall grant summary judgment
13  if the movant shows that there is no genuine dispute as to any material fact and the movant is
14  entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks omitted); Albino,
15  747 F.3d at 1166; Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011).  Each
16  party's position, whether it be that a fact is disputed or undisputed, must be supported by (1)
17  citing to particular parts of materials in the record, including but not limited to depositions,
18  documents, declarations, or discovery; or (2) showing that the materials cited do not establish the
19  presence or absence of a genuine dispute or that the opposing party cannot produce admissible
20  evidence to support the fact.  Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The Court may
21  consider other materials in the record not cited to by the parties, although it is not required to do
22  so.  Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031
23  (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).
24        The defendants bear the burden of proof in moving for summary judgment for failure to
25  exhaust, Albino, 747 F.3d at 1166, and they must "prove that there was an available
26  administrative remedy, and that the prisoner did not exhaust that available remedy," id. at 1172.
27  If the defendants carry their burden, the burden of production shifts to the plaintiff "to come
28  forward with evidence showing that there is something in his particular case that made the

existing and generally available administrative remedies effectively unavailable to him." Id. "If the undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56." Id. at 1166. However, "[i]f material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." Id.

In arriving at this Findings and Recommendation, the Court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this court did not consider the argument, document, paper, or objection. This Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

## III.

## DISCUSSION

### A.   Description of CDCR's Administrative Remedy Process

California Correctional Health Care Services ("CCHCS") has an administrative grievance process governed by the California Code of Regulations. (UF No. 16.); Cal. Code Regs., tit. 15 §§ 3999.225-3999.237. Under these regulations, inmates can grieve issues related to health care policies, decisions, actions, conditions, or omissions using a CDCR 602 HC, Health Care Grievance form. (UF No. 17.) To be timely, a grievance must be submitted by the inmate patient to the grievance office within thirty days of either the action or decision being grieved or upon learning of the action or decision being grieved. (UF No. 18.) Health care grievances are subject to two levels of review: grievances are first process at the institutional level by the Health Care Grievance Offices at each institution. (UF No. 19.) If an inmate is dissatisfied with the decision at the institutional level, he may appeal the grievance decision to the Health Care Correspondence and Appeals Branch ("HCCAB") at CCHCS headquarters. (Id.) Health care grievances are subject to a headquarters level disposition before administrative remedies are deemed exhausted. (UF No. 20.) An appeal of a healthcare grievance cannot include new issues not discussed in the underlying grievance. (UF No. 21.) If an inmate raises new issues on appeal,

the HCCAB can, but is not required to, address those issues in the appeal. (Id.)

**B.     Complaint Allegations**

On June 1, 2021, Plaintiff was transferred to Pelican Bay State Prison (PBSP). Plaintiff was told by NKSP officials that he would receive the prescribed non-soy diet and medical treatment at PBSP.

On June 1 and June 2, 2021, Plaintiff told registered nurse Lucero and primary Doctor Pimentel that he was sent to PVSP to get a prescribed non-soy diet. Both Lucero and Pimentel repeated the policy that the prison does not provide medically prescribed diets, and that CDCR will not provide a non-soy diet.

On June 23 and June 24, 2021, Plaintiff reported to registered nurse Long and Doctor Pimentel showing hives, rashes, severe abdominal pain, bleeding, severe head pain, dizziness, confusion, low heart rate, and fatigue due to the lack of a non-soy diet.

On July 1 and July 8, 2021, Plaintiff reported more reactions and again requested a non-soy diet. Long and Pimentel repeated the policy statement that CDCR does not provide a non-soy diet.

On July 17 and July 22, 2021, Plaintiff showed Long, Pimentel and Scheesley that he was bleeding from foods containing soy.

On August 5, 2021, Plaintiff reported to Long and Pimentel that he was suffering from hives and rashes which were infected. However, Long and Pimentel refused any treatment for those needs.

From August 1 to August 30, 2021, Plaintiff reported to Long and Pimentel that he was worried about severe bleeding, delay of treatment, and no treatment for hives, rashes and infections.

On August 23, 2021, Plaintiff reported to Long and Pimentel that his right leg was black and very painful. He also was suffering from bleeding, fatigue, confusion, and weakness, but he was not provided any medical treatment.

By September 1, 2021, Plaintiff had put in a number of grievances regarding Long, Pimentel, and Onyeje who all denied a proper diet and medical treatment.

On September 1 and September 2, 2021, Long, Pimentel, Onyeje, and Mason all repeated that they were aware of Plaintiff's soy allergy, but CDCR did not provide a non-soy diet.

5

On September 15, September 20, September 23, and September 30, 2021, Plaintiff reported to Long, Pimentel and other Defendants that multiple more attacks occurred and he was in need of medical treatment and diet.

On October 8, October 11, October 21, October 25, and November 5, 2021, Plaintiff reported the same concerns regarding his need for medical treatment and diet to Scheesley and Casillas who always told him that only Long, Pimentel and Onyeje could help him. On every occasion Plaintiff showed them his reactions to soy, but he was denied treatment and a non-soy diet.

By November 15, 2021, Plaintiff suffered the same right leg abscess caused by hives, rashes, and Defendants Long, Pimentel, and Onyeje refused any basic care even though the abscess was black, swollen and painful.

Later in November 2021, Plaintiff's right leg became worse and when he went to the medical building, Long, Pimentel, Onyeje, and Conanan refused treatment. Plaintiff went "man down" and Logan, Long, and Pimentel refused to send him to the TTA, and other medical officials overruled the decision. Logan, Long, Pimentel and Conanan refused outside medical care and treatment.

On December 1, 2021, Plaintiff went "man down" again and Clark overrode Logan, Pimentel and Conanan and sent him to the TTA.

On December 2, 2021, Plaintiff's cellmate notified staff of a medical emergency at 4:00 a.m. Logan, Pimentel, Long, and Conanan did not want to send Plaintiff to the TTA and refused outside care. Plaintiff showed his leg to the transportation sergeant who rushed Plaintiff to the emergency room in Bakersfield overruling the decision of Long, Logan, Conanan and Pimentel. The emergency Doctor put Plaintiff on a non-soy diet and wanted to keep Plaintiff longer but Conanan refused.

### C. Statement of Undisputed Facts[2]

1. Plaintiff initiated this lawsuit on April 6, 2022. (ECF No. 1.)
2. Plaintiff filed the operative second amended complaint on March 29, 2023. (ECF

---

[2] Referred to as "UF."

|   |     |                                                                                           |
|---|-----|-------------------------------------------------------------------------------------------|
| 1 |     | No. 34.)                                                                                  |
| 2 | 3.  | Plaintiff is an inmate in the custody of the California Department of Corrections and Rehabilitation. During all relevant times, Plaintiff was housed at Pleasant Valley State Prison. (ECF No. 34 at 21.) |
| 5 | 4.  | Defendant Onyeje is employed as the Chief Medical Executive for California Correctional Health Care Services ("CCHCS") at PVSP. (ECF No. 34 at 7.) |
| 7 | 5.  | Defendant Conanan is employed by CCHCS as the Chief Medical Executive and a Medical Doctor at PVSP. (ECF No. 34 at 8.) |
| 9 | 6.  | Defendant Long is employed by CCHCS as a Registered Nurse at PVSP. (ECF No. 34 at 8.) |
| 11| 7.  | Defendant Gomez Pimentel is employed by CCHCS as a primary care physician at PVSP. (ECF No. 34 at 8.) |
| 13| 8.  | Defendant Logan is employed by CCHCS as a Registered Nurse at PVSP. (ECF No. 34 at 8.) |
| 15| 9.  | On June 1, 2021, Plaintiff, transferred from North Kern State Prison to PVSP. (ECF No. 34 at 21.) |
| 17| 10. | This case proceeds on an Eighth Amendment official capacity claim against Defendant Macomber, CDCR's secretary, based on CDCR's alleged policy of not permitting non-soy diets for inmates and not labeling foods to identify if they contain soy. (ECF Nos. 34, 39, 51.) |
| 21| 11. | The case also proceeds on an Eighth Amendment deliberate indifference claim against Defendants Long, Gomez Pimentel, Onyeje, Logan, and Conanan for failing to treat his injuries after being denied a non-soy diet. (ECF Nos. 34, 39, 51.) |
| 25| 12. | Plaintiff alleges that between June 2021 and December 2021, Defendants Long, Gomez Pimentel, Logan, Conanan, and Onyeje did not provide Plaintiff with requested treatment for hives, rashes, and an abscess on his right leg, or complaints of rectal bleeding that Plaintiff believes was caused by consumption of soy |

7

|   |   |   |
|---|---|---|
| 1 |  | products. (ECF No. 34 at 22-27.) |
| 2 | 13. | Plaintiff claims that in June and July 2021 he suffered from frequent bouts of rectal bleeding that he attributes to consumption of soy products. Plaintiff reported these bouts to Defendants Long and Gomez Pimentel and asked for their assistance in identifying foods containing soy products as well as treatment. Defendants Long and Gomez Pimentel did not provide assistance in identifying foods containing soy products. (ECF No. 34 at 22-24.) |
| 8 | 14. | Plaintiff alleges that on July 1, and 8, 2021, Defendants Gomez Pimentel and Long refused to provide him with any treatment for his rectal bleeding. (ECF No. 34 at 24.) |
| 11 | 15. | Plaintiff also claims that Defendants Gomez Pimentel, Long, Conanan, Logan, and Onyeje refused to provide Plaintiff with a requested non-soy diet on multiple occasions between June and December 2021. (ECF No. 34 at 22-27.) |
| 14 | 16. | California Correctional Health Care Services ("CCHCS") has an administrative grievance process governed by the California Code of Regulations. (Declaration of K. Martin ("Martin Decl.") at ¶ 3; Cal. Code Regs., tit. 15, §§ 3999.225-3999.237.) |
| 18 | 17. | Under these regulations, inmates can grieve issues related to health care policies, decisions, actions, conditions, or omissions using a CDCR 602 HC, Health Care Grievance form. (Martin Decl. at ¶ 3; Cal. Code Regs. tit. 15, §§ 3999.226, 3999.227(a).) |
| 22 | 18. | To be timely, a grievance must be submitted by the inmate patient to the grievance office within thirty days of either the action or decision being grieved or upon learning of the action or decision being grieved. (Cal. Code Regs. tit. 15, § 3999.227(b).) |
| 26 | 19. | Health care grievances are subject to two levels of review: grievances are first process at the institutional level by the Health Care Grievance Offices at each institution. If an inmate is dissatisfied with the decision at the institutional level, he |

8

|   |     |                                                                                      |
|---|-----|--------------------------------------------------------------------------------------|
| 1 |     | may appeal the grievance decision to the Health Care Correspondence and Appeals |
| 2 |     | Branch ("HCCAB") at CCHCS headquarters.  (Martin Decl. at ¶ 3; Cal. Code |
| 3 |     | Regs. tit. 15, § 3999.226(a)(1).) |
| 4 | 20. | Health care grievances are subject to a headquarters level disposition before |
| 5 |     | administrative remedies are deemed exhausted.  (Martin Decl. at ¶ 3; Cal. Code |
| 6 |     | Regs. tit. 15, § 3999.226(g).) |
| 7 | 21. | An appeal of a healthcare grievance cannot include new issues not discussed in the |
| 8 |     | underlying grievance. If an inmate raises new issues on appeal, the HCCAB can, |
| 9 |     | but is not required to, address those issues in the appeal.  (Cal. Code Regs. tit. 15, |
| 10|     | § 3999.229(a)(3), 3999.230(i), (j).) |
| 11| 22. | While at PVSP, Plaintiff filed four health care grievances.  (Martin Decl. at ¶ 6, |
| 12|     | Ex. A [HCARTS tracking sheet].) |
| 13| 23. | Of those grievances three were exhausted at the headquarters level of review: |
| 14|     | PVSP HC 21000357, PVSP HC 22000032, and PVSP HC 21000435.  (Martin |
| 15|     | Decl. at ¶¶ 6-10, Ex. A, Ex. B [Grievance No. PVSP HC 21000357], Ex. C |
| 16|     | [Grievance No. PVSP HC 21000262], Ex. D [Grievance No. PVSP HC |
| 17|     | 22000032], Ex. E [Grievance No. PVSP HC 21000435].) |

**D.    Analysis of Defendants' Motion**

Defendants argue that Plaintiff failed to exhaust his available administrative remedies prior to bring suit.[3] More specifically, Defendants argue that only one grievance submitted by Plaintiff named a Defendant in this action and none of the grievances addressed his claims regarding a non-soy diet or consumption of soy or concern claims of improper treatment for rectal bleeding in June and July 2021.

In response, Plaintiff argues that he filed multiple grievances and accommodation requests identifying Defendants and their misconduct. In addition, Defendants hindered Plaintiff's grievance process by using their power of office to deny him "a full grievance and exhaustion

---

[3] Defendants concede that Plaintiff exhausted his official capacity claim against Defendant Macomber. (ECF No. 79-1 fn. 1.)

9

system." (ECF No. 83 at 2.)

In reply, Defendants argue that Plaintiff has failed to present evidence sufficient to create a material fact regarding whether administrative remedies were unavailable.

### 1.     Availability of Administrative Grievance Process

Here, Plaintiff concedes in the operative second amended complaint that the administrative remedies were available at the time the events giving rise to the complaint occurred. (ECF No. 34 at 9, 18, 30, 32.) While at PVSP, Plaintiff filed four health care grievances. (UF 22.) It is undisputed that of those grievances three were exhausted at the headquarters level of review: PVSP HC 21000357, PVSP HC 22000032, and PVSP HC 21000435. (UF 23.) In the operative second amended complaint, Plaintiff admits that the administrative remedies were available at his institution. (ECF No. 34 at 9, 18, 30, 32.) In addition, the exhibits attached to Plaintiff's opposition reflect that Plaintiff filed several other grievances in which he received final level decisions, including the grant of an appeal. (ECF No. 84 at 18-29, 30-42.) Nonetheless, Plaintiff continues to argue that the administrative remedies were unavailable.

The Supreme Court has clarified that there are only "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." Ross v. Blake, 578 U.S. 632, 643-45 (2016). These circumstances are: (1) the "administrative procedure . . . operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) the "administrative scheme . . . [is] so opaque that it becomes, practically speaking, incapable of use . . . so that no ordinary prisoner can make sense of what it demands;" and (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. (citations omitted). Other than these circumstances, the mandatory language of 42 U.S.C. § 1997e(a) forecloses judicial discretion meaning that a court may not excuse a failure to exhaust, even to take special circumstances into account. Id. at 648-49. Plaintiff's opposition does not establish unavailability on any basis.

///

As to the first and second circumstances, there is nothing to indicate the grievance system "operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates," that it is "so opaque that it becomes, practically speaking, incapable of use," or that prison officials "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 643-45. To the contrary, it is undisputed that Plaintiff exhausted three healthcare grievances during the relevant time. (UF 23.) Thus, the process was not a "dead end" or so "opaque" that exhaustion was futile.

Plaintiff argues that exhaustion was futile because his grievances were not investigated. However, the law is clear that in order to exhaust the administrative remedies, the prison's administrative rules must be followed. Woodford, 548 U.S. at 90. In this instance, Plaintiff was required to file a health care grievance within thirty days of the challenged action, and if the grievance was denied, he could appeal to the Health Care Correspondence and Appeals Branch, which exhausts the administrative remedies. Plaintiff's speculation that a grievance would be denied or not investigated is not sufficient to excuse exhaustion. Id. at 85 ("[A] prisoner must now exhaust administrative remedies even where the relief sought—monetary damages—cannot be granted by the administrative process.").

With regard to the third circumstance, Plaintiff claims that he was retaliated and intimidated by officers destroying his grievances, legal mail, and property at three prisons. (ECF No. 84 at 14:13-14.) In order to establish that exhaustion is excused due to threats of retaliation, the plaintiff must show both that "(1) the threat of [retaliation] actually did deter the plaintiff inmate from lodging a grievance or pursuing a particular part of the process; and (2) the threat is one that would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing the part of the grievance process that the inmate failed to exhaust." McBride v. Lopez, 807 F.3d 982, 987 (9th Cir. 2015) (quoting Turner v. Burnside, 541 F.3d 1077, 1085 (11th Cir. 2008)). Plaintiff fails to provide evidence to satisfy either prong.

Plaintiff fails to submit evidence to demonstrate that any Defendant communicated an objective threat to intimidate Plaintiff to not use the administrative grievance process. McBride, 807 F.3d at 987. Rather, Plaintiff alleges that Defendants failed to provide him with copies of his

11

medical records.  (ECF No. 84 at 4-5.)  Plaintiff attaches copies of requests to release medical records, but there is no indication that any of the Defendants received those forms and there is no other information regarding those requests.  (Id. at 4-5, 66-70.)  However, even if assuming the validity of Plaintiff's vague and conclusory allegations, there is insufficient evidence to establish that any Defendant communicated an objective threat to Plaintiff to not use the administrative grievance process.  There is no connection between Plaintiff's requests for medical records and his fear of retaliation if he filed a grievance. Plaintiff's vague statements related to his medical records, cell searches, and destruction of property and grievances from nondefendants do not provide an evidentiary basis to satisfy the objective prong. (ECF No. 84.)  Mere generalized allegations of fear or intimidation do not suffice to demonstrate that prison administrators thwarted an inmate's use of an available administrative remedy. McBride, 807 F.3d at 987; see also, Sealey v. Busichio, 696 Fed. Appx. 779, 781 (9th Cir. 2017) (affirming summary judgment on failure to exhaust where plaintiff's assertion that acts of correctional officers were objectively retaliatory was based on speculation, without personal knowledge); Gaines v. Beasley, 2018 WL 5270539, at *7 (E.D. Cal. Oct. 22, 2018) (finding no objective deterrence or retaliation where plaintiff continued to file complaints and appeals); Rodriguez v. Cnty. of Los Angeles, 891 F.3d 776, 794 (9th Cir. 2018) (allegations of "general and unsubstantiated fears of possible retaliation" insufficient to satisfy inmate's burden to produce evidence of something in the particular case that rendered administrative remedies unavailable).

In addition, Plaintiff has failed to submit evidence to demonstrate that any Defendant's conduct actually deterred him from submitting grievances. (ECF No. 84.)  Indeed, it is undisputed that Plaintiff filed four healthcare grievances during the relevant time. (UF 22.)  Plaintiff also attached several requests for accommodation request to his opposition from when he was incarcerated at PVSP. (ECF No. 84 at 114-16, 120-22.)  He also attached grievances from MCSP where he was assigned after PVSP (Id. at 44-46, 77-82), and non-healthcare related grievances from PVSP and NKSP. (Id. at 18-42.) These documents show that the alleged conduct of Defendants or any other staff from PVSP did not deter Plaintiff from submitting grievances. See Chacon v. Deputy Casas, No. CV 17-6573 JAK(JC), 2019 WL 1085386, at *12-14 (C.D. Cal.

1   Jan. 2, 2019) (inmate was not deterred from filing a grievance when he continuously complained
2   and asked for help numerous times and continued to confront the deputy he claimed was
3   retaliating against him.); Brown v. Rasley, No. 1:13-cv-02084-AWI BAM (PC), 2018 WL
4   4042822, at *4 (E.D. Cal. Aug. 23,l 2018) (rejecting plaintiff's claim of fear of retaliation when
5   evidence showed that he filed numerous appeals and that he "made repeated statements to prison
6   officials that he was a whistleblower, that he was going to stand up for prisoner rights. . .");
7   Woods v. Roddrick, Case No. 2:14-cv-2458 MCE AC P, 2016 WL 4061319 at *8 (E.D. Cal. July
8   29, 2016) (inmate was not deterred from filing a grievance when he filed a grievance a week
9   later.).

10   Further, the fact that Plaintiff's grievances were denied does not establish that the
11  grievance process was unavailable at PVSP.  Indeed, Plaintiff has no constitutional right to have
12  his grievances granted. See Jenkins v. Bernatene, 2012 WL 3764035, at *5 (E.D. Cal. Aug. 29,
13  2012) ("Plaintiff has a First Amendment right to file prison grievances but does not have a right
14  to any particular response."); Norman v. Walker, 2011 WL 6153274, at *4 (E.D. Cal. Dec. 12,
15  2011) ("While plaintiff may have a constitutional right to access established prison grievance
16  procedures, that right protects his ability to file the grievance, but does not protect him as to how
17  prison officials process and/or decide the grievance.").  Thus, the fact that Plaintiff's grievances
18  have been denied does not establish that the grievance process was effectively unavailable to him.

19   Accordingly, Plaintiff has not submitted admissible evidence to demonstrate that the
20  administrative remedy process was not available to him.

21   2.   Exhaustion of Administrative Grievance Process

22   As noted, Plaintiff filed four health care grievances at PVSP.  (UF 22.)  However, only
23  three were exhausted at the headquarters level of review: PVSP HC  21000357, PVSP HC
24  22000032, and PVSP HC 21000435.[4]  (UF 23.)

25  ///

---

[4] Defendants' motion also addressed unexhausted Grievance No. PVSP HC 21000262 concerning orthopedic shoes, priority legal user status, and medical records. (ECF No. 79-2.) However, because Plaintiff's opposition does not address this grievance (see ECF No. 84), it is not relevant to whether he exhausted the administrative remedies to the claims at issue in this action.

13

### a. PVSP HC 21000357

Grievance No. PVSP HC 21000357, was received at the institutional level on September 30, 2021. (Martin Decl. Ex. C.) Therein, Plaintiff alleged that in mid-August 2021, Defendant Gomez Pimentel refused to schedule a hospital recommended cauterization for rectal bleeding following a colonoscopy in late July or early August 2021 and failed to provide results of a cancer screening. (Id.) An Institutional Level Response was issued on December 7, 2021, with a disposition of no intervention. (Id.) Plaintiff appealed the grievance to the headquarters level and the appeal was received on January 24, 2022. (Id.) A Headquarters Level Response was issued on April 14, 2022, with a disposition of no intervention. (Id.)

Contrary to Defendant's argument, the Court finds that this grievance suffices to exhaust Plaintiff's deliberate indifference claim against Defendant Gomez Pimentel for the failure to provide follow-up cauterization for his rectal bleeding following the colonoscopy in July/August 2021, as pled in the operative second amended complaint.[5] (See ECF No. 34 at 30.) However, it does not grieve any other instances of alleged deliberate indifference or the claim that he was denied a proper non-soy diet.

### b. PVSP HC 22000032

Grievance No. PVSP HC 22000032 was received at the institutional level on February 8, 2022. (Martin Decl. Ex. D.) In this grievance, Plaintiff requested the release of his health records from the county jail. (Id.) The grievance was denied at the institutional level with no intervention. (Id.) Plaintiff appealed the decision and added additional allegations stating, in part:

> As I explained I asked for these records from the Doctor and staff because my basic constitutional right to have proper food and nutrition were causing me significant internal problems. The county knew I had vomiting diarrhea which was causing me depletion of vitamins A, C, D, resulting in me passing out twice resulting in facial and eye damage requiring surgery, still ongoing. This diarrhea vomiting and constipation cause severe rectal bleeding which caused infections to my body for well over a year which also CDCR, Doctors, staff knew about and failed to treat resulting in a severe infection which has damaged my right leg and knee permanently and severe ongoing pain also now has

---

[5] Plaintiff has alleged no facts to suggest that Defendant Gomez Pimentel failure to provide him with the alleged cancer test results placed him at substantial risk of serious harm, let alone that Defendant drew such inference or was deliberately indifferent to the same. Thus, such allegations do not give rise to a cognizable claim for relief.

14

> effected my heart these are serious conditions, so Doctor Gomez tells me in Oct/Nov 2021 if I wanted my records I should request them so I could prove the need for a higher care of service to my deteriorating health condition[.] Doctor Gomez and former CME Onyeje and staff failed to provide me, so in February 25, 2022 T. Jacob tells me she won't get records that Dr. Gomez told me to get, who obviously didn't want me to have these records which would prove I needed a soy diet it caused me vomiting, diarrhea, internal bleeding, fatigue, fainting, severe internal bleeding infections that at that time Doctor Gomez refused to treat or delayed.

(Martin Decl. Ex. D.)

The appeal was denied at the headquarters level with no intervention. The new issues raised for the first time at the appeal level were not addressed at the headquarters' level of review. (Id.) Indeed, the headquarters' level decision specifically stated:

> It is no appropriate to expand the health care grievance beyond the initial issue(s). The Health Care Correspondence and Appeals Branch has the discretion whether to address new issues; it has been determined the new issue(s), nutritional concerns, and soy diet, ongoing facial and eye concerns, infections and damage to the right leg and knee, and effects on heart, not included in the originally submitted CDCR 602 HC, Health Care Grievance, will not be addressed at the headquarters' level of review per California Code of Regulations, Title 15, Section 3999.230(j)."

(Id.) The law is clearly established that the requirements of the prison administrative system determine proper exhaustion. Cal. Code Regs. tit. 15, § 3999.230(i), (j); Smith v. Mendoza, No. 19-03750 BLF (PR), 2021 WL 930706, at *9 (N.D. Cal. Mar. 10, 2021) (finding that plaintiff did not exhaust his claims as to Defendants who were mentioned in an "upper-level appeal," but were not named in the original CDCR 602 Form.); Brannon v. Covarrubias, No. 22-16728, 2024 WL 1253788, at *2 (9th Cir. Mar. 25, 2024) (affirming district court decision that plaintiff did not exhaust claim against nurse that he only raised in the appeal to the headquarters-level of review which did not address plaintiff's new claim.); Jones, 549 U.S. at 218. Because Plaintiff improperly raised his allegations related to a non-soy diet for the first time at the appellate level, he did not exhaust the administrative remedies as to those additional allegations. Accordingly, the Court finds that grievance no. PBSP HC 22000032 failed to exhaust plaintiff's administrative remedies because it did not give adequate notice that Plaintiff challenged any of the Defendants alleged failure to provide him with a non-soy diet and adequate medical treatment while housed at PVSP.

15

Contrary to Plaintiff's contention that he will "show multiple other 602 and Accommodation[sic] grievance" that put PVSP prison administrators on notice of all the allegations, no additional healthcare grievances from PVSP were attached to his opposition. (ECF No. 84 at 7:7-13.)

### c. PVSP HC 21000435

In grievance no PVSP HC 21000435, the stated issues were disagreement with treatment of bleeding from colon and disagreement with delay of surgery. (Martin Decl. Ex. E.) Plaintiff's grievance did not name any Defendant. (Id.) An institutional level response was issued on February 14, 2022, with a disposition of no intervention. (Id.) Plaintiff appealed this grievance to the headquarters level of review. (Id.) The grievance was received at the headquarters level of review on March 10, 2022. (Id.) A headquarters level response was issued on June 2, 2022, with a disposition of no intervention. (Id.) At the headquarters level, Plaintiff attempted to expand his grievance to include a new issue, "non-soy or alternative diet," that was not included in the original grievance. (Id.) Plaintiff's new concerns were not addressed at the headquarters level of review. (Id.)

Because Plaintiff failed to name any Defendant in this grievance and attempted to improperly raise a new issue regarding his non-soy diet at the second level of review, this grievance failed to exhaust any of the claims at issue in this action. Harmon v. Lewandowski, Case No. 2:20-cv-09437-VAP-MRWx, 2021 WL 6618681, at *6 (C.D. Cal. Nov. 30, 2021) (dismissing claims against defendants not named in original grievance), aff'd, 2023 WL 2570425, *3-4 (9th Cir. 2023); Toscano v. Adam, Case No. 16-cv-06800-EMC, 2019 WL 2288281, *24 (N.D. Cal. May 29, 2019) (holding that grievance that did not identify another doctor did not properly exhaust administrative remedies as to that doctor because the prison had no reason to suspect that there was an issue with the other doctor.).

### d. Failure to Name Defendants Long, Logan, Onyeje, and Conanan

To reiterate, none of the grievances name Defendants Long, Logan, Onyeje, and Conanan. Under governing regulations, a grievance must provide any information known to the inmate patient about the issue being grieved including the staff member's "last name, first initial, title or

1  position, . . . ." Cal. Code Regs. tit. 15, § 3999.227(g)(1).  Plaintiff was required to follow these
2  administrative rules. Jones, 549 U.S. at 218 (holding that the amount of detail in an administrative
3  grievance necessary to properly exhaust a claim is determined by the prison's applicable
4  grievance procedures.). The only defendant named in any of Plaintiff's grievances is Defendant
5  Gomez Pimentel.  Indeed, the grievances do not provide any information that would put officials
6  on notice that two nurses (Defendants Long and Logan) and chief medical executives (Defendants
7  Conanan and Onyeje) were involved in any of the allegations addressed by Plaintiff's grievances.
8  There is no reference to nurses, where the nurses worked, specific appointments dates and times,
9  or any other information that would put officials on notice that specific medical staff could be
10  providing inadequate medical care. (ECF No. 79-2 at 24-28.) Unlike in Reyes v. Smith, 810 F.3d
11  654, 657-58 (9th Cir. 2016), where the grievance response indicated that prison officials had
12  identified the doctors who made the medical decision at issue, there is no indication in any
13  grievance response here that the institution was aware that any specific medical staff that had
14  made the decisions at issue in the grievance. (ECF No. 79-2 at 24-28.) Thus, these grievances
15  would not have put officials on notice of Plaintiff's current claims against Defendants Long,
16  Logan, Conanan, or Onyeje and all claims against them must be dismissed. See Harmon v.
17  Lewandowski, 2021 WL 6618681, at *6; Toscano v. Adam, 2019 WL 2288281, at *24.
18  Plaintiff's failure to follow prison regulations and name the medical staff at issue does not satisfy
19  the exhaustion requirements and Defendants Logan, Long, Conanan, and Onyeje are entitled to
20  summary judgment in their favor for Plaintiff's failure to exhaust administrative remedies.

    **e.**  **Submission of Reasonable Accommodation Requests and Other Exhibits**

22  In his opposition, Plaintiff submitted several non-healthcare grievances involving issues
23  with his mail at North Kern State Prison.  (ECF No. 84 at 18-42.)  Plaintiff also submitted a
24  grievance from Mule Creek State Prison where he was transferred after PVSP involving delays in
25  receiving mail.  (ECF No. 84 at 44-46, 77-86.)  Plaintiff further submits documents related to
26  three reasonable accommodation requests.  (ECF No. 84 at 114-116, 120-121, 136-137.)
27  ///
28  ///

More specifically, Plaintiff submitted request Log No. 164745671957 on March 14, 2022, in which he requested a computer to perform legal work, a soy free, heart healthy diet, to be referred to a specialist for infections, a lower tier, and a lower bunk. (ECF No. 84 at 114-116.) Defendant Conanan was a member of the Reasonable Accommodation Panel that addressed his concerns. (Id.)  Defendant Conanan recommended a temporary low bunk chrono for Plaintiff. (Id.)  On March 28, 2022, Plaintiff submitted request Log No. 164926247632. (ECF No. 84 at 120.)  Plaintiff requested that the infection of his right leg be examined, a surgery to stop the bleeding, and a non-soy diet to stop allergic reactions. (Id. at 120-121.) Defendant Conanan was a member of the Reasonable Accommodation Panel that addressed Plaintiff's concerns. (Id.) On April 11, 2022, Plaintiff submitted another reasonable accommodation request seeking a non-soy, heart healthy diet consisting of specific foods. (Id. at 137.)  Defendant Conanan was a member of the Reasonable Accommodation Panel that addressed Plaintiff's concerns. (Id. at 136-37.)

The filing of a reasonable accommodation request does not satisfy the administrative exhaustion requirement.  Indeed, a reasonable accommodation request is an information request for an American with Disabilities Act (ADA) accommodation that should be filed prior to pursuing the formal grievance process.  See, e.g., Acosta v. Servin, No. 20-CV-2225-MMA-MSB, 2021 WL 718599, at *4 (S.D. Cal. Feb. 24, 2021) ("If an inmate is disabled and seeks accommodations under the ['Americans with Disabilities Act'], he may submit a Reasonable Accommodation Request Form 1824 which is an informal request prior to pursuing formal grievance proceedings using Form 602.")  If the inmate disagrees with the response he receives from the Reasonable Accommodation Panel ("RAP"), he may submit a formal CDCR 602 grievance and/or a CDCR HC Grievance. See Harris v. Engels, No. CV 19-5590-PA (KK), 2022 WL 3691670, at *4 n.4 (C.D. Cal. July 6, 2022), report and recommendation adopted, No. CV 19-5590-PA (KK), 2022 WL 3686358 (C.D. Cal. Aug. 23, 2022); see also Thompson v. Hill, No. 24-cv-00357-MMS (DDL), 2024 WL 3418000, at *3 n.2 (S.D. Cal. July 15, 2024); Warzek v. Onyeje, No. 1:17-cv-01452-AWI-SAB PC, 2019 WL 1130471, at *7 (E.D. Cal. Marc. 12, 2019); Hampton v. Haynie, No. 2:15-cv-02038-TLJ-KJN, 2016 WL 8731362, at *9 (E.D. Cal. Jan. 15,

2016). Thus, Plaintiff's reasonable accommodation requests seeking a non-soy diet are not sufficient to establish that Plaintiff exhausted his administrative remedies related to those claims.

In addition, the filing of a CDCR Form 22 does not serve to exhaust the administrative remedies. A "Form 22" refers to the CDCR Form 22, Inmate/Parolee Request for Interview, Item, or Service. See Cal. Code Regs. Tit. 15, § 3086 (repealed effective June 1, 2020). Submitting a Form 22 is not the same as submitting a grievance to the appeals coordinator using a CDCR Form 602. See Dillingham v. Scruggs, No. 16-CV-03267-YGR (PR), 2018 WL 2938521, at *11 (N.D. Cal. June 12, 2018) (finding that a plaintiff failed to establish evidence showing that he submitted an administrative grievance, when the plaintiff only provided evidence showing that he "submitted multiple requests inquiring about the status of his ... 602 appeal using a CDCR Form 22 or 'Inmate/Parolee Request for Interview, Item of Service,' which is not the same as re-submitting the actual 602 appeal form."), aff'd, 787 F. App'x 450 (9th Cir. 2019).

## IV.

## RECOMMENDATIONS

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Defendants' exhaustion motion for summary judgment be denied as to Plaintiff's deliberate indifference claim against Gomez Pimentel regarding for the failure to provide follow-up cauterization for his rectal bleeding following the colonoscopy in July/August 2021, and granted in all other respects; and

2. The deliberate indifference claims against Defendants Long, Logan, Onyeje, and Conanan be dismissed, without prejudice, for failure to exhaust the administrative remedies.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **twenty-one (21) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court, limited to 15 pages in length, including exhibits. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified

time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:    **October 7, 2025**

STANLEY A. BOONE
United States Magistrate Judge